**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

RAYMEDICA, INC., a Minnesota Corporation,

Plaintiff,

v.

VLADIMIR STOY, REPLICATION MEDICAL, INC., a New Jersey Corporation, and REPLICATION MEDICAL, INC., a Delaware Corporation,

Defendants.

Civil No. 01-1841 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TO TRANSFER VENUE**

---

Dean R. Karau, Cynthia A. Jokela Moyer, and Dulce J. Foster, FREDRIKSON & BYRON, P.A., 200 South Fourth Street, Suite 4000, Minneapolis, MN 55402, for plaintiff.

Donald W. Niles and James H. Patterson, PATTERSON, THUENTE, SKAAR & CHRISTENSEN, P.A., 4800 IDS Center, 80 So. Eighth St., Minneapolis, MN 55402, for defendants.

Plaintiff Raymedica has sued defendants for tortious interference with contract and other claims, alleging that defendants interfered with its agreement to obtain certain patents from a non-party, Hymedix International, Inc. This matter is now before the Court on defendants' Motion to Dismiss for Lack of Personal Jurisdiction and/or

FILED ... 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

Improper Venue or, alternatively, for Transfer. For the reasons discussed below, the Court now denies defendants' motion.

## BACKGROUND

Plaintiff Raymedica is a Minnesota corporation that produces an implant device used in patients with spine impairments. A key component of Raymedica's device is "hydrogel," a material that Raymedica purchases from its manufacturer, Hymedix International ("Hymedix"), under a Raw Material Supply and Licensing Agreement (the "Raymedica-Hymedix Agreement" or "Agreement"). This agreement was executed in 1994 and renewed in 2001. Under the Agreement, Raymedica receives exclusive worldwide license of any Hymedix patents, knowledge, and improvements thereof, related to hydrogel technology for use in devices that treat spinal disc problems. The Agreement also prohibits Hymedix from developing such devices on its own.

Defendant Vladimir Stoy ("Stoy"), a citizen of New Jersey, was chairman of Hymedix's Board of Directors in 1994, when Hymedix and Raymedica executed the Agreement. Stoy was a founder of Hymedix,[1] and is an inventor of the hydrogel technology that Hymedix licenses to Raymedica under the Agreement. Stoy and two co-inventors received a patent for hydrogel in 1990. Stoy entered into a consulting agreement with Hymedix in 1993, which ran until 1998 (the "First Consulting Agreement") and contained the following provision:

[1] Hymedix was founded as Kingston Technologies, Inc.

> **7.1** [Stoy] hereby agrees that all inventions, improvements, ideas, names, patents, trademarks, copyrights, and innovations . . . which [Stoy] may originate, make or conceive in connection with his consultancy with [Hymedix], either alone or with others and whether or not during working hours or by the use of facilities of [Hymedix], and which relate to or are or may likely be useful in connection with the business or contemplated business of [Hymedix], shall be the exclusive property of [Hymedix] (whether or not patentable).

(Karau Aff. Ex. D at 4.) In 1998, Stoy and Hymedix executed a second agreement (the "Second Consulting Agreement"), which did not contain such a provision.

At some point during his consultancy for Hymedix – it is not clear whether under the First or Second Consulting Agreement – Stoy developed improvements to Hymedix's hydrogel technology. He invented a spinal disc implant using this improved hydrogel, but he did not assign these inventions to Hymedix. Stoy instead applied for patents for the improved hydrogel and the spinal disc implant. These patents were ultimately issued as U.S. Patent Nos. 6,232,406 (the "'406 patent") and 6,264,695 (the "'695 patent"), respectively. Stoy later transferred these patents to defendants Replication Medical, Inc. (New Jersey) ("RMI-New Jersey"), and Replication Medical, Inc. (Delaware) ("RMI-Delaware"). RMI-New Jersey received the '695 patent, while RMI-Delaware received the '406 patent.

Stoy founded RMI-New Jersey in 1997, and founded RMI-Delaware in 2000. Stoy is an owner, officer, and director of each company. In August 2000, RMI-Delaware purchased substantially all of RMI-New Jersey's assets, including the '695 patent. Raymedica's complaint alleges that RMI-Delaware is now using the '695 and '409 patents to produce and market spinal disc products in competition with Raymedica.

It is undisputed that none of the defendants have resided, conducted business, or had any direct contacts in or with the State of Minnesota. Raymedica argues that Stoy knew of the Raymedica-Hymedix Agreement, and interfered with it by transferring the patents to his own companies, the RMI defendants, where he could freely use the patents to compete with Raymedica and others.

**ANALYSIS**

**I. Motion to Dismiss**

**A. Personal Jurisdiction**

Defendants move to dismiss this action under Rule 12(b)(2) of the Federal Rules of Civil Procedure, arguing that the Court lacks personal jurisdiction over them. To survive this motion, Raymedica need only establish a prima facie case of personal jurisdiction. *See Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612 (8th Cir. 1994). For purposes of the prima facie showing, all facts must be viewed in a light most favorable to the nonmoving party – here, Raymedica – and all factual conflicts must be resolved in that party's favor. *See Digi-Tel Holdings, Inc. v. Proteq Telecommunications., Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

Courts in the Eighth Circuit are "guided by two primary rules" when determining whether they have personal jurisdiction over a non-resident defendant. *Id.* First, the facts must satisfy the forum state's long-arm statute, and second, the exercise of personal jurisdiction over the defendant must not violate due process. *Id.* Minnesota's long-arm statute extends jurisdiction to the fullest extent permitted by the federal Constitution.

Minn. Stat. § 543.19. *See Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991). The only question, therefore, is whether due process permits the exercise of personal jurisdiction over defendants in this case.

For the Court to assert personal jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Such contacts must be more than "random," "fortuitous," or "attenuated." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

Sufficient contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). In assessing the defendant's reasonable anticipation, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King,* 471 U.S. at 475 (citation omitted).

To determine whether the defendant has minimum contacts, courts look to five factors: 1) the nature and quality of the contacts with the forum state; 2) the quantity of the contacts with the forum state; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) the convenience of the parties. *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d

1338, 1340 (8th Cir. 1983). The first three factors are most important, and the last two are "secondary factors." *Digi-Tel Holdings*, 89 F.3d at 523.

Defendants argue that they have absolutely no contacts with Minnesota. They further contend that the only Minnesota contacts relevant to this case, and upon which Raymedica focuses, were made by Hymedix, a non-party. Raymedica, however, argues that the Court does have personal jurisdiction under the "effects test" outlined by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Supreme Court held that when a defendant directs intentional, tortious actions at a resident of the forum, the defendant may reasonably anticipate being haled into court in the forum to answer for its conduct. *See id.* at 790 (citing *World-Wide Volkswagen*, 444 U.S. at 297-98). Raymedica claims jurisdiction, alleging that defendants tortiously interfered with its contract with Hymedix, knowing that Raymedica would be injured in Minnesota. Defendants counter by claiming that the "effects test" does not apply, because Raymedica has still not shown the requisite Minnesota contacts.

The Court recognizes that the traditional five-factor test for minimum contacts does not strongly support personal jurisdiction over defendants here. In cases alleging an intentional tort, however, these factors "do not provide a complete answer" to the question of personal jurisdiction. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991). Indeed, courts in the Eighth Circuit have applied *Calder*'s "effects test" to assert personal jurisdiction in cases where a defendant's minimum contacts might not otherwise be sufficient. In *Dakota Industries*, for example, the Eighth Circuit found that personal jurisdiction existed over a defendant who allegedly

intentionally infringed upon plaintiff's trademark. *Id.* at 1391. Although defendant's contacts with the forum state, South Dakota, would not have satisfied the "minimum contacts test," the court held that defendant's actions were "uniquely aimed" at South Dakota, and that the brunt of the injury would be felt there. *Id.* *See also Finley v. River North Records, Inc.*, 148 F.3d 913, 915-17 (8th Cir. 1998) (holding record company that fraudulently induced promotion of concert in forum state was subject to personal jurisdiction under *Calder* and *Dakota Industries*); *Janel Russell Designs, Inc. v. Mendelson & Assoc., Inc.*, 114 F. Supp. 2d 856, 862 (D. Minn. 2000) (applying the *Calder* test and holding that plaintiff's allegation of intentional copyright infringement was the most important factor in finding personal jurisdiction over defendant); *B.F. Goodrich Co. v. Auxitrol, S.A.*, No. 00-43, 2001 WL 1640103 at **4-5 (D. Minn. Nov. 30, 2001) (holding that defendant's alleged intentional infringement of plaintiff's trade dress, knowing that plaintiff was a resident of forum, was sufficient to assert personal jurisdiction under *Calder* and *Dakota Industries*).

Defendants argue that *Calder*'s "effects test" does not apply because Raymedica has not shown minimum contacts related to this case. Defendants first suggest that "for personal jurisdiction to be premised on the 'effects test' of *Calder* 'the plaintiff [must be] the focus of the activities of the defendants **out of which the suit arises.**'" (Def. Reply Br. at 15 (quoting *Calder*, 465 U.S. at 788) (brackets and emphasis defendants').). This (augmented) statement from *Calder* misrepresents the Supreme Court's holding in that case.

In *Calder*, Shirley Jones, a professional entertainer residing and working in California, sued a reporter and editor, both Florida residents, for allegedly libelous statements they published in the *National Enquirer*, a national magazine with its largest circulation in California. The reporter and editor, contending that the article had been prepared entirely in Florida, claimed they had insufficient contacts with California to support personal jurisdiction. In its preliminary review of the relevant law, the Court discussed the doctrine of "minimum contacts:"

> In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation." . . . The plaintiff's lack of "contacts" will not defeat otherwise proper jurisdiction . . . but they may be so manifold as to permit jurisdiction when it would not exist in their absence. Here, the plaintiff is the focus of the activities of the defendants out of which the suit arises.

*Calder*, 465 U.S. at 788 (citations omitted). This passage clearly shows that the Court's statement about "focus of the activities" was not a hard and fast requirement, as defendants claim, but merely dicta illustrating how minimum contacts with a forum can sustain personal jurisdiction. This dicta supported the Court's subsequent discussion of the case, and its ultimate annunciation of the "effects test" – that such "manifold" contacts can be found when defendants committed an "alleged wrongdoing intentionally directed at a California resident." *Id.* at 790.

Defendant next cites a variety of cases holding that defendants' minimum contacts with the forum must be the same contacts that give rise to the cause of action. Defendant also argues that Raymedica impermissibly seeks to stitch together a "chain of contracts" to assert personal jurisdiction. Both of these arguments miss the point. None of the

plaintiffs in the cases defendants cite alleged an intentional tort. *See, e.g., Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1122 (D. Minn. 1996) (holding, in a case where no intentional tort was alleged, that "the due process clause requires that the case 'arise out of or be related to'" defendant's minimum contacts with the forum); *Land-O-Nod*, 708 F.2d 1338; *Conwed Corp. v. Nortene, S.A.*, 404 F. Supp. 497, 502-03 (D. Minn. 1975) (holding that an alleged chain of contracts whereby plaintiff received contractual rights to certain patents was insufficient to assert personal jurisdiction over two non-resident corporations). This key allegation of an intentional tort takes the contacts analysis beyond the traditional factors to the additional considerations mandated by *Calder*. *See Dakota Indus.*, 946 F.2d at 1391 (holding that the "effects test" does not abandon the traditional five-factor test, but that *Calder* requires considering additional factors when an intentional tort is alleged).

Here, as in *Dakota Industries*, *Finley*, and *Janel Russell Designs*,[2] plaintiff has alleged that Stoy and the RMI defendants intentionally interfered with a contract,

---

[2] It should be noted that the holdings in these cases were not confined to the "effects test." In several cases, in fact, the effects test seems to be one of several independent grounds for asserting jurisdiction, often alongside findings that certain minimum contacts existed. The Court points out, however, that none of these cases depended on the findings of minimum contacts for their assertions of jurisdiction. Moreover, each case emphasizes that the "effects test" is an alternative and equal basis of jurisdiction. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) (resting its holding on the effects test, and noting that the holding is merely "bolstered" by the suggestion of some direct contacts with the forum); *B.F. Goodrich Co. v. Auxitrol, S.A.*, No. 00-43, 2001 WL 1640103 at *5 (D. Minn. Nov. 30, 2001) (using the term "moreover," stating that the effects test was an independent grounds for asserting jurisdiction). One case even held that the effects test was the "most important[]" reason to assert jurisdiction. *Janel Russell Designs, Inc. v. Mendelson & Assoc., Inc.*, 114 F. Supp. 2d 856, 862 (D. Minn. 2000). Moreover, the holding in *Calder* rested solely on the allegation of an intentional tort. *Calder v. Jones*, 465 U.S. 783, 790 (1984). *See also Finley v. River North Records, Inc.*, 148 F.3d 913 (8th Cir. 1998) (basing jurisdiction solely upon the effects test).

knowing that the brunt of the injury would fall upon Raymedica in Minnesota. Under the criteria set forth in *Calder*, this is sufficient for defendants to "reasonably anticipate being haled into court" in Minnesota. *See Calder*, 465 U.S. at 790; *Dakota Indus.*, 946 F.2d at 1391; *Finley*, 148 F.3d at 916.

Defendants next raise questions about Raymedica's apparent paraphrasing of the First Consulting Agreement. Defendants attempt to parse the language of Paragraph 7.1 of the Agreement, which governed assignment of inventions. Raymedica's submissions describe Paragraph 7.1 as requiring Stoy to assign to Hymedix all inventions made "while having access to Hymedix proprietary information." (Pl. Br. at 2.) Defendants point out, however, that Paragraph 7.1 actually provides that Stoy must assign all invitations created "in connection with his consultancy." (Def. Reply Br. at 6.) Defendants therefore claim that Raymedica makes no valid claim because its pleadings do not use these specific terms. The Court rejects this argument. While defendants point out one specific passage of Paragraph 7.1, they ignore other language in the section, which further requires Stoy to transfer all inventions "which relate to or are or may be likely be useful in connection with the business or contemplated business of the Company . . . ." (Karau Aff. Ex. D at 3.) Raymedica's Complaint clearly alleges that Stoy violated this aspect of the Agreement with Hymedix, whether or not it uses the "magic words" defendants feel are necessary.

Defendants' remaining arguments focus on the weakness of plaintiff's case for liability. For instance, defendants argue that the Complaint does not properly allege that Stoy invented the '695 and '409 patents under the First Consulting Agreement, which

contained the Paragraph 7.1 assignment provision. Rather, defendants argue, Stoy may have created the inventions under Second Consulting Agreement, which had no such provision. If this were true, Stoy could have freely kept the patents, and Raymedica's case would be moot. This argument splits hairs. The Complaint clearly alleges that Stoy transferred the patents to RMI-New Jersey and RMI-Delaware, when he was in fact obligated to transfer them to Hymedix. (*See* Complaint ¶¶ 48-59.) Moreover, plaintiff alleges that Stoy's obligation continued as long as he consulted for Hymedix, no matter which consulting agreement was in effect. (*See* Complaint ¶¶ 38, 41.)

Evidence may be produced through discovery or at trial that will reveal exactly when exactly Stoy created the invention, and which may support or undermine Raymedica's claims. Such evidence does not concern the Court at this stage of the case. Factual questions about Raymedica's allegations may exist, but for this motion, Raymedica need only make a prima facie showing of jurisdiction, and the Court must construe all facts in its favor. *Digi-Tel Holdings,* 89 F.3d at 522. Raymedica has plainly alleged that Stoy and the RMI defendants intentionally interfered with the contract between Hymedix and Raymedica, a Minnesota company, and that defendants knew the brunt of that tortious interference would be felt by Raymedica in Minnesota. *Calder* and its progeny clearly hold that such allegations are sufficient to find that defendants "reasonably anticipate[d] being haled into court" in Minnesota to answer for their alleged actions, and to provide sufficient contacts consistent with notions of fair play and substantial justice. The Court finds that it may assert personal jurisdiction over

defendants, and their motion to dismiss for lack of personal jurisdiction will therefore be denied.

**B. Improper Venue**

Defendants also move to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. If personal jurisdiction exists at the commencement of an action, venue is proper under 28 U.S.C. §1391. This section provides in relevant part: "[f]or purposes of venue . . . a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Because Raymedica has made a prima facie showing of personal jurisdiction, venue is proper in the District of Minnesota. *See Dakota Indus.*, 946 F.2d at 1392. Defendants' motion must therefore also be denied on this ground.

**II. Motion to Transfer Venue**

Defendants move alternatively to transfer venue under 28 U.S.C. § 1404(a). To determine whether to transfer a case, courts must consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). Courts are not limited to considering these enumerated factors, but may base such determinations on a case-by-case evaluation of the particular circumstances in each case. *Id.* A motion to transfer venue should be granted only where the defendant makes a clear showing that the action should be transferred, and it must be denied if the effect of a transfer would merely be to

shift the inconvenience from one party to the other. *Prestige Hospitality Group, Inc. v. Flagship Services Corp.*, Civ. No. 00-1453, 2001 WL 228418 at *6 (D. Minn. Feb 27, 2001); *Norval Indus., Inc. v. Superior Cos.*, 515 F. Supp. 895, 899 (D. Minn. 1981).

Defendants argue that convenience of the parties and witnesses favor transfer to the Eastern District of Pennsylvania or the District of New Jersey. They claim that the only factor favoring Minnesota as a forum is that Raymedica resides here, and note that all defendants live in one of those districts, that defendants' business records are in those two districts, and all the non-parties that Raymedica has subpoenaed reside in New Jersey. Defendants further argue that the interests of justice, represented by judicial economy, would be served by transfer, because most parties are local to the Districts of Eastern Pennsylvania and New Jersey. Raymedica contends that defendants merely seek to shift the inconvenience of venue to it.

After considering the factors outlined in *Terra International* and the relevant circumstances in this case, the Court concludes that defendants have not made the required clear showing to support transfer of venue. Although defendants raise several points that would make another forum more convenient for them, the Court finds defendants have not shown that transfer would do anything but shift the inconvenience of venue from them to Raymedica. Accordingly, the Court will deny plaintiff's alternative motion to transfer venue.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion to Dismiss for Lack of Personal Jurisdiction and/or Improper Venue, or Alternatively, for Transfer [Docket No. 9] is **DENIED**.

DATED: Sept. 30, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge